UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.

MICHAEL HAMLIN,

    Plaintiff,

v.

CARNIVAL CORPORATION,

    Defendant.

_____/

## **COMPLAINT**

Plaintiff sues Defendant and states:

### **Parties, Jurisdiction, and Venue**

1. Plaintiff is a Maryland resident and citizen born in 1964.

2. Defendant is a Florida citizen for diversity purposes because its principal place of business and center of operations is located in Miami, Florida.

3. This Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1) because Plaintiff is a foreign citizen and Defendant is a Florida citizen, and more than $75,000.00 is in controversy.

4. The Miami Division of the Southern District of Florida is the proper venue for this action because:

   a. Defendant conducted and continues to conduct substantial business there; and

   b. Defendant selected the venue and agreed to litigate this dispute there.

5. Plaintiff has satisfied all conditions precedent or Defendant waived them.

6. At all material times Defendant owned, operated, possessed and/or controlled the *MV Carnival Conquest* ("the ship") in foreign and local commerce.

7. Plaintiff boarded the ship for a multi-day cruise ("the cruise") on September 26, 2015 and was at all material times lawfully on the ship.

## General Allegations of Fact

8. Defendant readily acknowledges "[t]he operation of cruise ships . . . involve the risk of incidents, including those caused by the improper operation and maintenance of ships . . . which may cause injury and death . . . . [and] our ships have been involved in accidents and other incidents in the past.  We may experience similar or other incidents in the future.  These types of incidents may bring into question guest . . . health [and] safety . . . ."  (See Defendant's Form 10-K for the fiscal year ended November 30, 2015, p. 33).

9. In response to Defendant's knowledge of the foregoing risks:

   a. Defendant states it "consider[s] health . . . safety, security . . . to be core guiding principles" and it has an "uncompromising commitment to the safety and comfort of our guests committed to protecting the health, safety, and security of our guests." (See Defendant's Form 10-K for the fiscal year ended November 30, 2015, p. 5).

   b. In order to maintain a safe, healthy and comfortable environment for their passengers, Defendant has established an internal corporate department headed by its Fleet Medical Director to make sure that the medical centers on its ships, including on the *MV Carnival Conquest* are staffed by ship's physicians and nurses that meet or exceed credentialing guidelines and meet or exceed the practice standards established by the Cruise Line International Association (CLIA) and the American College of Emergency Physicians.  (See https://www.acep.org/Content.aspx?id=29980).

2

DAVID C. RASH, P.A.
1655 NORTH COMMERCE PARKWAY, SUITE 303, WESTON, FLORIDA 33326 - TELEPHONE (954) 515-0072 FACSIMILE (954) 515-0073

10. At all material times, Defendant voluntarily undertook to provide medical staff and services to Plaintiff during the cruise.

11. At all material times, Defendant was in the business of, among other things, selling medical services to its passengers, including Plaintiff.

12. At all material times, Defendant created and operates a Fleet Medical Department ("FMD") at its headquarters in Miami, Florida.

13. Defendant's FMD controls and is responsible for, among other things, screening, hiring, training, overseeing, supplying, and selling to passengers, including Plaintiff, the ship's medical staff and facilities.

14. Defendant's FMD also controls and supplies the medical facilities on the ship with forms, equipment, medicine, supplies, and standard operating procedures.

15. Defendant's FMD maintains medical records on the passengers it treats, including Plaintiff.

16. Defendant and its FMD pride themselves on having medical facilities on their ships for the passengers' safety and health, and a professional medical staff to assist, in the case of a medical situation.

17. It is believed that Defendant provides medical malpractice coverage for its medical personnel.

18. Defendant controls the work schedules for the ship's medical staff like.

19. Defendant controls and offers the possibility of advancement for its medical staff.

20. Defendant recruits medical professionals for employment on its ships as medical staff.

21. Defendant's ship's physicians and nurses are staff members of the vessels typically with officer rankings, and they wear name tags and/or clothing indicating their rank and that they are part of the ship's staff and employed by Defendant.

22. Other than actual medical decisions made by the ship's physicians and/or ship's nurses, Defendant controls, and has the right of control, of all other aspects of the ship's physicians' and ship's nurses jobs including the controlling of: the medical staff's hours of their work, location of the work, job salary paid for time of work, not specific jobs/patients, job benefits, job advancement, all equipment provided and utilized in their job, room and board, hiring and firing, and they are subject to orders and direction of the ship's Captain and other superior officers.

### Plaintiff's Medical Condition

23. On or about September 27, 2015, while aboard the ship, Plaintiff was found semi-conscious in an elevator where he was allegedly witnessed to have had a seizure episode.

24. Plaintiff was brought to the ship's medical facility in a semi-conscious/agitated and combative state, and where his wife told the medical staff that he had a history of hypertension, diabetes, gastritis and arthritis, and that he was currently taking metformin, Prevacid and medication for his hypertension.

25. Plaintiff did not have any history of seizures before he boarded the ship for the cruise.

26. The ship's medical staff including the ship's doctor and nurse, began examining and treating Plaintiff.

27. By way of history, the ship's medical staff documented that Plaintiff's wife stated that her husband "drank a lot of alcohol at night without any food," that he was a "known alcoholic" and that he had "known alcohol withdrawal with delirium a month ago" and "recovered with 1 day at that time."

DAVID C. RASH, P.A.
1655 NORTH COMMERCE PARKWAY, SUITE 303, WESTON, FLORIDA 33326 - TELEPHONE (954) 515-0072 FACSIMILE (954) 515-0073

28. Defendant's medical staff and ship board medical records are false and all information regarding "alcohol" is not true. Plaintiff is not an alcoholic, has never been treated for alcoholism and has never had alcohol withdrawals and/or delirium therefrom.

29. Defendant's medical staff intentionally falsified Plaintiff's medical records.

30. Defendant's own "SailSign" onboard purchase account shows Plaintiff did not purchase large amounts of alcoholic beverages at any time before his incident.

31. Nonsensically, the ship's medical staff falsely tried to give the impression through their fraudulent medical records that Plaintiff was suffering from alcohol withdrawals despite indicating he had consumed a lot of alcohol the night before.

32. In response to Plaintiff's urgent medical condition, the ship's medical staff essentially did nothing for Plaintiff but give him massive amounts of intravenous sedatives (including lorazepam, midazolam, diazepam, and haloperidol), to the point he was comatose, hallucinating and/or decompensating.

33. Additionally, despite giving massive amounts of sedatives and other drugs to Plaintiff, Defendant's medical staff failed to properly monitor Plaintiff's blood chemistry because the ship's medical facility's equipment necessary to test Plaintiff's blood chemistry was broken and inoperable.

34. Defendant's medical staff was never able to properly or adequately diagnose Plaintiff and his condition worsened each day as he remained nearly comatose in the ship's medical facility.

35. Defendant's ship's medical staff appears to have only contacted Defendant's FMD at corporate headquarters shore side for the first time on September 28, 2016 two days after Plaintiff fell ill, and then proceeded to keep Plaintiff on board the ship for a 3rd day, despite Plaintiffs urgent need for shore side medical treatment and his deteriorating condition.

DAVID C. RASH, P.A.
1655 NORTH COMMERCE PARKWAY, SUITE 303, WESTON, FLORIDA 33326 - TELEPHONE (954) 515-0072 FACSIMILE (954) 515-0073

36. Defendant and its medical staff failed to request and/or implement any urgent evacuation of Plaintiff from the ship.

37. Given Plaintiff's history and presentation, lack of working necessary ship's medical facility equipment necessary to monitor Plaintiff's blood chemistry and inability to diagnose and treat Plaintiff, Plaintiff should have been urgently removed from the ship for more advanced shore side medical care either by helicopter or boat, or by changing the ship's course to the nearest more advanced shore side hospital.

38. On or about September 27, 28 and 29, 2015, Defendant, the ship's officer crew, including but not limited to the captain, and the ship's medical staff failed to, among other things:

    a. Appreciate the danger Plaintiff was exposed to given his history and presentation;

    b. Properly treat and diagnose Plaintiff's medical conditions with, among other things, appropriate therapy and medication;

    c. Utilize proper medical testing equipment to monitor Plaintiff's blood chemistry;

    d. Failed to maintain and repair the ship's medical facility equipment, including but not limited to the blood chemistry testing machines;

    e. Provide a proper course of care and treatment;

    f. Timely remove Plaintiff from the ship for the fastest possible advanced shore side medical treatment;

    g. Adhere to the requirements of the American College of Emergency Physicians, Safety of Life at Sea and International Safety Management guidelines applicable to passenger safety that Defendant admits apply to its operations.

39. On September 29, 2015, Plaintiff and his wife were removed from the ship in St. Maarten and Plaintiff was taken to the local hospital in a comatose condition with fever, restlessness, and

6

DAVID C. RASH, P.A.
1655 NORTH COMMERCE PARKWAY, SUITE 303, WESTON, FLORIDA 33326 - TELEPHONE (954) 515-0072 FACSIMILE (954) 515-0073

tachypnea suffering progressive desaturation leading to intubation with mechanical ventilation. The hospital in St. Maarten immediately determined that Plaintiff needed to be flown out by air ambulance due to his critical condition.

40. Defendant charged Plaintiff over $1,200.00 for the negligent medical care he received on the ship during the cruise.

41. Because Defendant left Plaintiff and his wife in a foreign country, St. Maarten, with little or no assistance so that on October 3, 2015, Plaintiff's wife had to make arrangements to have her critically ill husband flow out of St. Maarten by air ambulance to Fort Lauderdale, Florida where he was hospitalized in Broward General Hospital and initially found to be with a fixed pupil and without response to deep painful stimuli.

42. On October 14, 2015, Plaintiff was finally discharged from Broward General Medical Center with severe and permanent injuries to his brain, including memory loss, and to the nerves in his hand causing the need for continued medical treatment at home in Maryland and the inability to do his job for months, all because of the negligent medical care and treatment rendered by Defendant and its medical staff.

## COUNT 1

### DEFENDANT'S VICARIOUS (EMPLOYEES/AGENTS) LIABILTY FOR THE NEGLIGENCE OF ITS MEDICAL STAFF

43. Plaintiff incorporates paragraphs 1-42.

44. At all times material, the ship's medical staff, including doctors and nurses who were involved in the care and treatment of Plaintiff, were employees and/or agents of Defendant, and were at all times material acting within the course and scope of their employment and/or agency with Defendant.

7

45. At all material times, Defendant, through its ship's staff employees and agents, owed Plaintiff a duty to operate the ship in a manner that was reasonable under the circumstances, which by Defendant's own admission includes the duty to meet or exceed the standards for properly caring and treating Plaintiff, and properly screening, training, overseeing, and equipping the ship with a medical staff and facilities as promulgated by the American College for Emergency Physicians. (See https://www.acep.org/Content.aspx?id=29980).

46. During the cruise, Plaintiff required medical attention and because he had no reasonable or practical alternative for medical care other than Defendant's ship's medical staff, he was forced to receive treatment there.

47. At all material times, Defendant, through its ship's medical staff employees and agents agreed and undertook to examine, diagnose, treat and attend to Plaintiff.

48. At all material times, Defendant and the ship's medical staff breached that duty and were negligent in these non-exclusive ways:

    a. Failing to properly assess, diagnose, and treat Plaintiff's medical condition that occurred during the cruise;

    b. Failing to maintain and repair critical ship's medical facility medical equipment necessary to diagnose and treatment passengers/patients, including Plaintiff;

    c. Failing to timely remove Plaintiff from the ship given the Plaintiff's medical condition and ship's medical staff's inability to properly care and treat Plaintiff; and

    d. Creating, supplying, and operating the ship's medical facilities and staff in a way that allowed the foregoing breaches to occur.

49. The foregoing acts and omissions fell below the standard of care and were not reasonable under the circumstances. As a direct, proximate, and foreseeable result of the foregoing

DAVID C. RASH, P.A.
1655 NORTH COMMERCE PARKWAY, SUITE 303, WESTON, FLORIDA 33326 - TELEPHONE (954) 515-0072 FACSIMILE (954) 515-0073

breaches, Plaintiff sustained serious and permanent injuries, including brain and hand injuries, resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of medical and nursing care and treatment, and aggravation of a previously existing condition. Plaintiff further lost wages and earning capacity. The losses are permanent, continuing, and Plaintiff will suffer them in the future.

WHEREFORE, Plaintiff asks for:

    a. Judgment for damages against Defendant in an amount proven at trial;

    b. Cost of suit;

    c. Prejudgment interest where applicable; and

    d. Jury trial.

## COUNT 2

### DEFENDANT'S VICARIOUS (APPARENT AGENCY) LIABILITY FOR THE NEGLIGENCE OF ITS MEDICAL STAFF

50. Plaintiff incorporates paragraphs 1-42.

51. At all material times, the ship's medical staff were apparent agents of Defendant and acting within the course and scope of their agency.

52. At all material times, Defendant, through its ship's staff apparent agents, owed Plaintiff a duty to operate the ship in a manner that was reasonable under the circumstances, which by Defendant's own admission includes the duty to meet or exceed the standards for properly caring and treating Plaintiff, and properly screening, training, overseeing, and equipping the ship with a medical staff and facilities as promulgated by the American College for Emergency Physicians.

53. These non-exclusive facts support apparent agency:

    a. Defendant made representations to Plaintiff:

9

i. The cruise line make the ship's physician an officer of the ship;

ii. The cruise line labels the ship's physician as an officer of the ship and held him out to be an officer of the ship;

iii. The cruise line labels the ship's nurses as members of the ship's crew and held them out as such;

iv. The cruise line provides the ship's physician with a uniform and the uniform has epaulets and stripes indicating a rank in the hierarchy of the ship's officers;

v. The cruise line provides the ship's nurses with uniforms;

vi. The cruise line allows the ship's physician and nurses to eat with the ship's crew;

vii. The cruise line provides a cabin for the ship's physician and nurses in the crew area of the ship, not the passenger area;

viii. The cruise line allows the ship's physician to be addressed by ship's crew as an officer of the ship;

ix. The cruise line puts the ship's physician and nurses under the command of the ship's superior officers including the master of the ship;

x. The cruise line in its literature and elsewhere onboard its ships shows the ship's physician and nurses as crew members, or officer(s) and/or employee(s) of the cruise line;

xi. The cruise line requires that the ship's physician and nurses sail with the ship;

xii. The cruise line represents to immigration authorities that the physician and nurses are members of the ship's crew;

xiii. The cruise line provides the ship's physician and nurses with an onboard medical center, and provides within that medical center all the medical equipment,

10

    diagnostic machines, disposable goods, medications, and other materials for their use;

  xiv. The cruise line allows and requires the ship's physician and nurses to operate and provide services out of the ship's medical center which is provided by the cruise line and which is equipped solely by the cruise line;

  xv. The cruise line charges for the services of the medical center which includes services of the ship's doctors and other medical staff and charges for the medical equipment and good provided by the cruise line to the passenger's onboard charge account;

  xvi. The cruise line prominently displays a photograph of the ship's physician along with photographs of the other ship's officers;

  xvii. The cruise line introduces the ship's physician to the passengers along with the other members of the officer staff at the Captain's cocktail party and other shipboard events; and

  xviii. Defendant held out the ship's medical staff as possessing authority to act on its behalf.

b. Plaintiff relied on Defendant's representations; and

c. Plaintiff's wife acting on his behalf changed their position in reliance on Defendant's representations in that they did not seek out other medical care on board, did not arrange for Plaintiff's own urgent evacuation from the ship because of recommendations made by the ship's medical staff, and they reasonably believed Defendant provided the ship's medical staff to treat Plaintiff.

11

54. At all material times, Defendant, through its apparent agents, agreed and undertook to examine, diagnose, treat and attend to Plaintiff.

55. At all material times, Defendant's apparent agents breached their duty to Plaintiff and were negligent in these non-exclusive ways:

    a. Failing to properly assess, diagnose, and treat Plaintiff's medical condition that occurred during the cruise;

    b. Failing to maintain and repair critical ship's medical facility medical equipment necessary to diagnose and treatment passengers/patients, including Plaintiff;

    c. Failing to timely remove Plaintiff from the ship given the Plaintiff's medical condition and ship's medical staff's inability to properly care and treat Plaintiff; and

    d. Creating, supplying, and operating the ship's medical facilities and staff in a way that allowed the foregoing breaches to occur.

56. The foregoing acts and omissions fell below the standard of care and were not reasonable under the circumstances. As a direct, proximate, and foreseeable result of the foregoing breaches, Plaintiff sustained serious and permanent injuries, including brain and hand injuries, resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of medical and nursing care and treatment, and aggravation of a previously existing condition. Plaintiff further lost wages and earning capacity. The losses are permanent, continuing, and Plaintiff will suffer them in the future.

57. Because Defendant's apparent agents were acting within the course and scope of their agency at the time they were negligent, the law imputes their negligence to Defendant.

WHEREFORE, Plaintiff asks for:

   a. Judgment for damages against Defendant in an amount proven at trial;

DAVID C. RASH, P.A.
1655 NORTH COMMERCE PARKWAY, SUITE 303, WESTON, FLORIDA 33326 - TELEPHONE (954) 515-0072 FACSIMILE (954) 515-0073

    b. Cost of suit;

    c. Prejudgment interest where applicable; and

    d. Jury trial.

                               DAVID C. RASH, P.A.
                               Attorneys for the Plaintiff
                               1655 North Commerce Parkway
                               Suite 303
                               Weston, Florida 33326
                               Telephone:  (954) 515-0072
                               Facsimile:   (954) 515-0073
                               Primary Email: david@dcrashlaw.com
                               Secondary Email: maileidys@dcrashlaw.com

                               By:    */s/ David C. Rash*        
                                       DAVID C. RASH
                                       Florida Bar # 977764